## APPEAL OF BELLA G. DABNEY, ET AL.
## [ESTATE OF FLORENCIO J. VERRIER, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 28, 1888—Decided May 14, 1888.

The only estate of a testator consisted of a sum of money unsecured in the hands of a brother, who owned valuable real estate heavily incumbered. By agreement of all parties interested in the estate, the brother, having executed to the executor junior mortgages upon his real estate and assigned to the executor the leases thereon, was permitted to collect the rents, the receipts therefrom to be accounted for in a certain manner: *Held,*

1. That, as the executor had acted in good faith and as a prudent man would act in the management of his own affairs, he was not liable to account for rents not paid over to him but applied by the debtor to purposes other than those specified in the agreement.

2. Assignments of error merely alleging error generally in, " dismissing exceptions," " in confirming an account," or, " in confirming the adjudication," point out no error in the account or adjudication for consideration in this court.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 235 January Term 1888, Sup. Ct.; court below, No. 430 January Term 1881, O. C.

Adjudication.

On June 27, 1887, Victor Guillou, executor of the will of Florencio J. Verrier, deceased, filed his second and final account charging himself with the amount of the indebtedness of Rene Guillou to the estate, as shown by the report of *Mr. George Junkin*, auditor of accountant's first account, filed May 23, 1882, $47,300, less amount paid July 1, 1879, to accountant and by him paid to J. P. Keating, on account of judgment of Edward V. Verrier, $358.02, leaving $46,941.98; and taking credit, after various other items, for balance still due and unpaid on the bond and mortgage of Rene Guillou, $41,140.02. In an income account, the accountant charged himself with interest received on bond and mortgage of Rene Guillou, $800, and took credit for the same amount as paid to J. P. Keating on account of judgment of Edward V. Verrier.

On July 8, 1887, the above account having been called for audit, Bella G. Verrier, widow of testator and cestui que trust under his will, claimed that the accountant should be surcharged with certain items aggregating $7,415.11. On July 19th, the auditing judge, FERGUSON, J., filed the following opinion and decree:

The accountant in this case filed his first account February 4, 1881. By the agreement of all parties in interest, this account was referred to George Junkin, Esq., as auditor, who filed his report May 23, 1882, and which report was duly confirmed by this court.

In order to properly understand the nature and character of the claim presented, it will be necessary to refer at length to the report of the auditor upon this first account.

By this report it appears that when the testator died the whole of his estate consisted of money, which was in the hands of Rene Guillou, the uncle of his wife, then Mrs. Bella G. Verrier, the cestui que trust under his will. This money amounted to between $52,000 and $53,000, of which the testator held no evidence whatever and no security. The amount appeared upon the books of Mr. Rene Guillou, who at that time was a large owner of real estate, which, however, was all or nearly all incumbered with mortgages. About this time, September, 1873, the great financial panic caused by the Jay Cooke failure occurred, and all values were very much depreciated, particularly real estate; and beyond doubt had the real estate

of Rene Guillou been forced to a sale, then or at any time since, the estate of Mr. Verrier would not have realized anything. Mr. Victor Guillou, the executor, with the assistance of Mr. Samuel Dickson, his counsel, investigated the affairs of his uncle Rene Guillou, and the result of this investigation was that Mr. Rene Guillou was allowed to manage his real estate according to his best judgment for the interests of all concerned, but not to dispose of any of it without notice and consultation. This arrangement was approved of by Mrs. Verrier. The auditor states that it is not necessary for him to recite in detail the particulars of Mr. Rene Guillou's dealings with his properties under this arrangement, but the auditor has no reason to doubt that he acted in the utmost good faith in carrying out the arrangement he made with his nephew, the executor, and his niece, the life tenant, Mrs. Verrier. He made some payments on account of principal, and he continued to pay to her the interest on the debt due her husband, down to the fall of 1878, when, because the taxes, repairs, interest on incumbrances, etc., ate up the income, he has been unable to do so ever since.

The principal creditor of this estate was the brother of the testator, Edward V. Verrier, who recovered a judgment for $9,163.92, and his judgment was attached by a creditor of his, Mde. Helen Des Chappelles. Messrs. R. L. Ashhurst and J. Percy Keating represented this attaching creditor, and after investigation they became convinced that to push their claim to execution would result in their not realizing anything for their client. They accordingly, in July, 1881, settled by accepting mortgages from Mr. Rene Guillou for their claim, and a small sum in cash, as will be referred to hereafter.

Among the properties owned by Mr. Rene Guillou was a very large and valuable property on the southeast corner of Fourth and Cherry streets, containing in front one hundred and twenty-five feet and in depth ninety-nine feet; Nos. 117, 119, 121, 123, 125, and 127 North Fourth street. This property was incumbered with mortgages amounting to $151,000. On August 26, 1879, Rene Guillou executed to Victor Guillou, executor of Florencio J. Verrier, a bond and mortgage on the whole of this property for $47,300, being the balance then due Verrier's estate, payable in one year. This mortgage was

Adjudication.

of course subject to the prior incumbrances. The whole of the estate of the said testator now consists of this mortgage.

The auditor further finds that, at the time of the execution of this mortgage, an arrangement was made with Mr. Rene Guillou by Mr. Victor Guillou, by which the former became the agent of the latter to take charge of all these properties, rent the same, pay the taxes, etc., and account to Mr. Victor Guillou for the residue of the income on account of the mortgage and its interest. This arrangement is still in force, but the net income has amounted as yet to enough to pay the interest upon the first mortgages only. Mr. Rene Guillou was examined fully as to all these matters and the books of account of rents were open, and there was no allegation or evidence made or offered to show that his statements were incorrect or that the facts were otherwise than as set forth by him.

The debt due Mr. Edward V. Verrier by the Verrier estate amounted to $10,358.02, including debt, interest, and costs to July 1, 1881; and the debt due to Mde. Des Chappelles, for which she obtained judgments in her foreign attachments against Victor Guillou, executor of the Verrier estate, was $4,223.63.

Mr. Rene Guillou had, as a further security, executed and delivered to Victor Guillou, executor, a mortgage for $5,000 upon a property at Atlantic City belonging to his wife. He had also assigned to him another mortgage for $5,000 on the Fourth and Cherry streets property. Both of these mortgages were assigned to J. Percy Keating, Esq., as collateral security under the agreement hereinafter recited. The auditing judge finds that about this date, July 1, 1881, the status of the Verrier estate with relation to this property at Fourth and Cherry streets appears to have been about as follows: First mortgages for $151,000 covering the whole property; the mortgage to Victor Guillou, executor of Florencio J. Verrier, for $47,300, with another mortgage on the same property for $5,000, and one upon the Atlantic City property for $5,000 as collateral security; Edward V. Verrier held a judgment against the Verrier estate for $10,358.02, and Mde. Des Chappelles had an attachment upon the Verrier estate on her judgment against Edward V. Verrier for $4,223.63; so that if either the judgment creditor, or attaching creditor of the judg-

ment creditor, were to push their claims, both being against the estate of Florencio J. Verrier, the result must be the sale of the property by the sheriff, subject to the $151,000 of mortgages. If this had been done it is very doubtful if one dollar would have been realized for either of them. Verrier's estate and the creditors of Verrier's estate would both alike have been sacrificed.

Realizing this fact, these parties whose interests were identical, determined to make an effort to save their very sick claims by careful nursing. With that end in view, on the first day of July, 1881, they made an agreement in writing. This agreement is signed by Victor Guillou, executor of Florencio J. Verrier, deceased, Rene Guillou, Richard L. Ashhurst, attorney for Mrs. Helen Des Chappelles, J. Percy Keating, attorney for Edward Verrier. It recited:—

That Edward V. Verrier had recovered a judgment against Victor Guillou, executor, on which there was due $10,358.02; that Helen B. Des Chappelles had obtained judgment in two writs of foreign attachment in which the said Edward V. Verrier was defendant and Victor Guillou, executor as aforesaid, garnishee, upon which there is due the sum of $4,223.63 payable out of the said judgment recovered by the said Edward V. Verrier against said Victor Guillou, executor. That the assets of the estate of Florencio J. Verrier consist of the said mortgage of $47,300 and the two other mortgages, one on the Atlantic City property for $5,000, and the other on the Fourth and Cherry streets property for $5,000, as collateral for the mortgage for $47,300.

And reciting further: "And whereas the said Rene Guillou has assigned and transferred to the said Victor Guillou, executor as aforesaid, all the leases now existing on the said premises situate Nos. 117, 119, 121, 123, 125, and 127 North Fourth street, and has covenanted and agreed and hereby doth covenant and agree to assign and transfer any and all future leases which may hereafter be made for any part or parts of the said premises and to faithfully account for all the rentals of the said premises:" In consideration of the premises the said parties did agree: 1. That Victor Guillou as such executor would assign to J. Percy Keating, Esq., the two $5,000 mortgages upon the Atlantic City property and the Fourth

street property respectively, to secure the payment of the sums due to Edward V. Verrier and Helen B. Des Chappelles upon their judgments respectively. 2. That Victor Guillou as such executor should pay over to J. Percy Keating, Esq., in each year, on account of the principal of the said judgments, the sum of $800 in addition to and over and above the semi-annual interest upon the said mortgages respectively, until the whole amount due upon the said judgments is paid. 3. Provides that if the net rentals do not yield the sum of $800 per annum that then only the net sum realized is to be paid. 4. Victor Gillou is to render an account of the receipts and expenditures when required by Keating. 5. J. Percy Keating covenants to re-assign the said two mortgages upon the principal and interest of the said two judgments being paid.

Under this agreement and the foregoing facts, it is claimed that Victor Guillou, the accountant, should be surcharged with the sum above mentioned:

1. Because he was the mortgagee of the premises in possession thereof, and therefore bound to faithfully account for the proceeds thereof.

2. If he was not in possession thereof himself, his agent, Rene Guillou, was, and that he is bound by the acts of his agent.

With regard to the first proposition the evidence shows that in point of fact Mr. Victor Guillou never was in possession of the premises nor exercised any act of ownership about the same; that the title was in Rene Guillou, and has always continued to be so down to the present time. He has rented the same, paid the taxes, water-rent, interest on incumbrances, and exercised every other act of ownership. The only evidence offered to show that Mr. Victor Guillou was in possession as mortgagee, was the clause of the foregoing agreement which recites that Mr. Rene Guillou covenants to assign to Victor Guillou, executor, all leases made and to be made for any part or portion of the said premises. With reference to this clause, Mr. Guillou testified that the leases were only assigned to him as an additional security for his claim and that of the other two creditors, and to protect them all against the attaching creditors of Rene Guillou, who had judgment, creditors who were attaching the rent in his hands of the tenants of the build-

ing and thus making trouble.   In view of the undisputed fact that Rene Guillou had always been in possession of the building, the auditing judge fails to see in this covenant any evidence sufficient to find that the accountant in this case was in possession thereof as mortgagee.

The next question to consider is, whether Rene Guillou was in possession of the premises as agent of the accountant, and if so, is the accountant responsible for his acts.

Before considering this question let us look for a moment at the claim presented by the claimant.   It is composed of five items, which appeared to have been picked out of the account-book which Mr. Rene Guillou kept with this property, and produced at the audit, viz:—

No. 1. Items previous to August 26th, 1879   .   $1,266.80
    2. Interest to Colladay, Trout & Co.   .   .   3,240.00
    3. Repairs of fire   .   .   .   .   .   .      286.48
    4. Paid on account of Second National Bank  1,834.80
    5. Balance for the year 1882 not brought forward   .   .   .   .   .   .   .   .   1,087.03

                                               $7,715.11
         Deduct errors, &c.   .   .   .   .   .     300.00

                                               $7.415.11

\*     \*     \*     \*     \*     \*     \*     \*

Whether these payments were or were not properly made by Mr. Rene Guillou, how is the accountant in any event to be held responsible for them?

Mr. Rene Guillou was the owner of the building, the title was in his name, and the rents received were his, and he may be considered as having the right to do what he pleased with his own, excepting that he had voluntarily agreed with the creditors of the building to assume the control and management of it and apply the income to pay the claim, in the effort to work out the salvation of them all.   Each of them recognized the fact that, with prior mortgages amounting to $151,000, to push his particular claim meant perhaps the entire loss of it; and, as the accountant in this case was behind them all in the mortgage of this estate, a much greater reason existed in his case for endeavoring to preserve the property than in the case of any of the others; for, while in the case of a

Adjudication.

sheriff's sale they might possibly get something, his prospects of doing so were so very contingent and remote as to amount to no prospect whatever. Therefore it was, that in the agreement above recited the main consideration of all appeared to be to keep down the taxes and interest on the prior incumbrances, in the hope that, if they could carry the property along, the time might arrive when the value of real estate would so much improve that a sale might be made of this particular property at a figure that would leave them all out of it without a loss. There is no doubt that this was the effort of the accountant as well as the others interested, and in that effort Rene Guillou, while he was the owner of the premises, appears to have been acting as the agent for them all. His interests were tied up with theirs. If the property could be saved from a sheriff's sale and sold privately, there might be something for him, but if it went to a sheriff's sale all was gone. In the report of the auditor on the first account he speaks of Mr. Rene Guillou as the agent of the accountant to manage this property, but from all that the auditing judge can see in the evidence in this case the foregoing is the extent of his agency. He represented all interests, his own included, in the effort to save a very valuable property from the hammer of the sheriff.

Let us put this case in the worst possible aspect for the accountant. Suppose we consider Mr. Rene Guillou as the regularly employed agent of the accountant, and that, while acting in that capacity, he collected the rents of the premises and misappropriated them. Would there be any liability upon the part of the accountant? Upon a question of this sort the test is: Has the accountant acted in good faith and as a prudent man would act in the management of his own affairs?

There can be no question about this. Mr. Rene Guillou, while he is the uncle of the accountant as well as of the cestui que trust in this case, is a gentleman in whom all the other parties interested in this building appear to have had confidence. He had been unfortunate, but there was no allegation against his integrity. The rest of the creditors trusted him, why should not the accountant? He is a gentleman who is in the real estate business. He has charge of other estates for other people. On account of his personal interest in this property, he was particularly adapted for its management. It

Adjudication.

was no part of the accountant's duty, even if he had the right, to collect the rents of this building. He would have had to employ some one as his agent. Who could be better employed than the man whose interests were identified with his own, and whose character for honesty, integrity, and fair dealing has never been questioned?

All that is required of a trustee is common skill, prudence, and caution. An executor is not liable beyond what he receives unless in case of gross negligence. When he acts as others do with their own goods and in good faith, he is not liable.

Applying these rules to this case, the auditing judge sees no ground upon which the executor in this case can be surcharged as claimed, and it is therefore refused.

The accountant is entitled to amount paid register
  of wills, filing this account,  . . . $20 00
And costs of the clerk of the Orphans' Court, .  13 50
                ———
               $33 50

The balance of the estate will be held by him subject to future accounting.

And it is further ordered and decreed that the above balance in the hands of accountant be paid and distributed as above awarded, and the annexed account be confirmed nisi upon payment of the clerk's costs.

To this adjudication, Bella G. Dabney, life tenant, and Acelie Verrier, remainderman, under the will of the decedent, filed twenty-two exceptions, nearly all of which related to questions of fact. These exceptions, on argument before the court in banc, were dismissed and the adjudication confirmed, without opinion filed. Thereupon the exceptants took this appeal assigning the following errors:

1. The learned court below erred in dismissing the exceptions filed by the exceptants, Bella G. Dabney and Acelie Verrier, to the adjudication of the auditing judge.

2. The learned court below erred in sustaining the account filed by Victor Guillou, executor, &c., as his second and final account of Florencio J. Verrier, deceased.

3. The learned court below erred in confirming the adjudication of the auditing judge.

*Mr. E. Hunn, Jr.*, for the appellants:

The principle of law is that an executor is liable only for the want of ordinary care, which is such care as a prudent man would use in guarding his own estate. But, "generally speaking, if an executor appoint another to receive the money of his testator, and the latter receives it, it is the same thing as if the executor himself had actually received it and will be assets in his hands; consequently, appointing another to receive who will not repay is a devastavit:" Williams on Ex., 6th Am. ed., 1817. Executors are not liable for the mismanagement or insolvency of their agents, which they could neither foresee nor control: Calhoun's Est., 6 W. 186; it follows inevitably that the converse of the proposition is true: Cressman's Est., 2 Phila. 76; Charlton's App., 34 Pa. 473; Schouler's Exec. and Admrs., § 321.

*Mr. R. D. Maxwell* (with him *Mr. S. S. Hollingsworth*), for the appellee:

1. The finding of an auditing judge upon a question of fact is entitled to the same weight as the verdict of a jury, and will only be set aside on such grounds as would justify the setting aside of such verdict: McConnell's App., 97 Pa. 31.

2. It has been said time and time again by this court, "All that a court of equity requires of trustees is common skill, prudence and caution. Executors, administrators, and guardians are not liable beyond what they receive, unless in case of gross negligence. When they act as others do with their own goods, and in good faith, they are not liable:" Neff's App., 57 Pa. 91. Payments made to save the estate, to defend its title, are invariably allowed: 4 Kent, Com., 186.

OPINION, MR. JUSTICE PAXSON:

This was an attempt to surcharge the accountant with the sum of $7,415.11, for money which had never been received by him. The facts may be summarized as follows: When the testator died it was found that the only estate left by him consisted of about $52,000, which was in the hands of Rene Guillou, and unsecured. Mr. Guillou was the uncle of the accountant, and of the appellant, Mrs. Dabney. He was at that time the owner of a large amount of real estate, all heavily incumbered.

The Verrier estate was in debt to Edward V. Verrier to the extent of $10,358.02. If Rene Guillou had been pressed for the money at that time, it is clear that the Verrier estate would not have realized a dollar, either to pay its creditors or the appellants, who are respectively the widow and child of the testator. Under such circumstances the course pursued was the only one that could have been taken with any show of good sense or business sagacity. Rene Guillou executed to the accountant, as executor of Florencio J. Verrier, a mortgage in the sum of $47,300, upon a valuable property at Fourth and Cherry, subject however to prior mortgages amounting to $151,000. He also gave accountant another mortgage on the same property for $5,000, and a mortgage for $5,000 on Atlantic city property. Edward V. Verrier had a judgment against the estate for his $10,358.02, and Mde. Des Chappelles had an attachment against the same estate on a judgment against Edward V. Verrier, and had obtained judgment against the accountant as garnishee in the sum of $4,223.63. As adverse proceedings on either of these judgments would have been ruin to all parties in interest, and could have benefited no one, an agreement in writing was entered into on July 1, 1881, by all the parties in interest, the accountant representing the estate of his testator, the most important feature of which was that Rene Guillou was to assign to the accountant all the leases on the Fourth street property, and to faithfully account for all the rentals of the said premises. It is not needed for the purposes of this case to specify the purposes for which such rents were to be applied. It is sufficient to say that the accountant received only $800, which amount appears in his account and is not the subject of controversy. The contention is, that Rene Guillou applied certain sums of money received for rents to other purposes, which he ought to have paid over to the accountant. It is only just to say that no actual fraud is charged in this matter, but it is contended the accountant should be surcharged with them because Rene Guillou was his agent.

In considering this question we are bound by the findings of the facts by the auditing judge. There is not a single assignment of error to such findings. The first assignment was perhaps intended to cover this branch of the case, but it is not in conformity to the rules of court, and will not therefore

be considered. We have, then, the facts distinctly found that Rene Guillou remained in possession of the premises, collected the rents, paid the taxes, interest on prior liens, etc.; that the accountant never was in possession as mortgagee; that the leases were assigned to him merely as an additional security to the mortgage held by the estate and that of the other two creditors, parties to the agreement, and to protect them all against the attaching creditors of Rene Guillou; that the latter was the agent of all parties in interest, and not of the accountant merely; that he represented all interests, his own included, in the effort to save a very valuable property from the hammer of the sheriff.

Under such circumstances we need not discuss the several items with which it was attempted to surcharge the accountant. It would be hard and inequitable to hold him for the acts and omissions of Rene Guillou, acting as he was as the agent of all parties in a family affair, and where the accountant himself had no personal interest in it whatever. The accountant appears to have acted in entire good faith in an attempt to save a valuable property from destruction, which effort has been in part successful, and may eventually prove entirely so.

If, however, we treat Rene Guillou as the agent of the accountant solely, which is the most unfavorable view for the latter, we are still unable to see any just reason why he should be surcharged. He was not in possession of the property, did not collect the rents, and was not entitled to do so. The leases were merely assigned as collateral and to prevent attachments which, if laid, would sweep away the rents and as a necessary result prevent their application to the interest and taxes, to be followed by foreclosures and sale of the property. The agreement left the possession in Rene Guillou, with a covenant to account for the rents over and above taxes, interest, and repairs. It was no part of the duty of the executor to collect the rents and take charge of the property, and even had he volunteered to do so, he would have been entitled to employ an agent for that purpose. If he selected such agent with ordinary prudence and care he would not have been liable for his default. There is much force in the remarks of the auditing judge upon this point. He says: "Suppose we regard Mr. Rene Guillou as the regularly employed agent of the ac-

countant, and that, while acting in that capacity, he collected the rents of the premises and misappropriated them: Would there be any liability on the part of the accountant? Upon a question of this sort the test is: Has the accountant acted in good faith, as a prudent man would act in the management of his own affairs? There can be no question about this. Mr. Rene Guillou, while he was the uncle of the accountant as well as of the cestui que trust in this case, is a gentleman in whom all the other parties interested in this building appear to have had confidence. He has been unfortunate, but there was no allegation against his integrity. The rest of the creditors trusted him—why should not the accountant? He is a gentleman who is in the real estate business. He has charge of other estates for other people. On account of his personal interest in this property, he was particularly adapted for its management. It was no part of the accountant's duty, even if he had the right, to collect the rents of this building. He would have had to employ some one as his agent. Who could be better employed than the man whose interests were identified with his own, and whose character for honesty, integrity, and fair dealing has never been questioned? All that is required of a trustee is common skill, prudence, and caution. An executor is not liable beyond what he receives unless in case of gross negligence. When he acts as others do with their own goods, and in good faith, he is not liable."

Aside from this, the assignments of error raise no question for discussion. The first, as before observed, is not in conformity with the rules of court, and the others merely allege error in confirming the account and the adjudication of the auditing judge. No error in the account or in the adjudication is pointed out, and the decree might well have been affirmed for this reason alone.

> The decree is affirmed and the appeal dismissed at the costs of the appellants.

MR. CHIEF JUSTICE GORDON dissented.